**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**BEN LEWIS, AARON NORRID, BILLY JO QUISENBERRY and FRED ROMERO, by and through their legal guardian and next friend THE ARC OF NEW MEXICO, BREANNE LIDDELL, by and through her parent and legal guardian JUDY LIDDELL, MATTHEW ALLEN, by and through his parents and legal guardians JIM and ANGELA ALLEN, FAY MORGAN, DEBORAH EMINGER and PROTECTION AND ADVOCACY SYSTEM, INC.,**

**Plaintiffs,**

**vs.** **No. CIV 99-0021 MV/JHG**

**NEW MEXICO DEPARTMENT OF HEALTH, NEW MEXICO DEPARTMENT OF HUMAN SERVICES, J. ALEX VALDEZ, Secretary of the Department of Health and Secretary Designee of the Department of Human Services in his official capacities, and GOVERNOR GARY JOHNSON in his official capacity,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiffs' Motion for Attorneys' Fees and Expenses **[Doc. No. 202]**, filed on March 5, 2004, and fully briefed on May 7, 2004. Plaintiffs contend they prevailed on their motion for summary judgment on Counts I and II of the Amended Complaint and are thus entitled to reasonable attorneys' fees under 42 U.S.C. § 1988. In support of their motion, Plaintiffs have submitted affidavits attesting to the reasonableness of their request.

Defendants do not challenge Plaintiffs' right to attorneys' fees. Rather, Defendants oppose the motion and argue the amount requested by Plaintiffs is unreasonable. Defendants request the Court reduce Plaintiffs' request for attorneys' fees by "no less than fifty percent (50%)."

**I. Attorney's Fees Under 42 U.S.C. § 1988(b)**

Section 1988(b) provides "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *see also, Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1247 (10th Cir.1998)("As the attorneys of prevailing plaintiffs in a civil rights action, the appellants were entitled to an award of attorney's fees, expenses, and costs associated with the prosecution of the case. *See* 42 U.S.C. §1988; 28 U.S.C. §1920."). "Although the power to award such fees is discretionary, that discretion is narrow once a civil rights plaintiff demonstrates that he is a 'prevailing party.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998). A plaintiff who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit" is a prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Under §1988(b), Plaintiffs must prove two elements in their fee request. Plaintiffs must prove they are prevailing parties in the proceedings and that the fee request is reasonable. *Id.* Additionally, prevailing parties must make a good-faith effort to exclude excessive, redundant, or unnecessary hours from their fee request. *See Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). In this case, Defendants do not dispute that Plaintiffs are prevailing parties. Rather, Defendants challenge the reasonableness of the amount of attorneys' fees Plaintiffs request.

To determine the reasonableness of a fee request, the Court must begin by calculating the "lodestar amount" of a fee. *Robinson*, 160 F.3d at 1281. The Court determines the lodestar amount by multiplying the number of attorney hours "reasonably expended" by the "reasonable hourly rate." *Hensley*, 461 U.S. at 433. Plaintiffs are entitled to the presumption that this lodestar amount reflects a reasonable fee. *Robinson*, 160 F.3d at 1281.

In their supporting memorandum brief, Plaintiffs requested the following attorneys' fees:

**Sanders & Westbrook Law Firm**

Maureen A. Sanders

District Court time– 208.7 hours @ $250/hr = **$52,175.00**

**4.2** hours no charge

Court of Appeals time– 69.4 hours @ $250/hr = **$17,350.00**

**6.7** hours no charge

Duff Westbrook

District Court time– 425.7 hours @ $225/hr = **$95,782.50**

**25.7** hours no charge

Court of Appeals time– 88.1 hours @ $225/hr = **$19,822.50**

**0.5** hours no charge

Law Clerk– 9.25 hours @ $85/hr = **$786.25**

**Total Fees**: **$185,916.25** minus 5% voluntary reductions of **$9,295.81** for a total of **$176,620.44**

**Adjusted Total Fees**: **$176,620.44** plus gross receipts tax of **$10,266.06** = **$186,886.50.**

**Protection and Advocacy System, Inc.**

Colleen Miller– 171.15 hours @ $225/hr for a total of **$38,508.75**

**15.8** hours no charge

Michael Parks– 483.25 hours @ $185/hr for a total of **$89,401.25**

**32.0** hours no charge

Jama Fisk– 136 hours @ $150/hr for a total of **$20,400.00**

**31.1** hours no charge

Sandra Gomez– 177.2 hours @ $135/hr for a total of **$23,922.00**

**110.3** hours no charge

Nancy Koenigsberg– 30.2 hours @ $175/hr for a total of **$5,285.00**

**2.6** hours no charge

**Total Fees**: **$177,517.00**.

Therefore, Plaintiffs initially requested attorneys' fees in the amount of **$364,403.50** (**$186,886.50** + **$177,517.00**). Plaintiffs listed the hours for which they did not charge. Additionally, Ms. Sanders and Mr. Westbrook noted they had taken a voluntary 5% reduction in their fee request. Plaintiffs also assert they are not seeking attorneys' fees for time spent on claims on which they did not prevail. Defendants challenge this assertion and contend Plaintiffs' time sheets indicate Plaintiffs are charging attorneys' fees for unsuccessful claims. Defendants set forth the time entries they contend are not compensable. In their reply to Defendants' response in opposition to their attorneys' fees request, Plaintiffs concurred in part and further reduced their attorneys' fees request as follows:

**Sanders & Westbrook Law Firm**

Maureen Sanders

District Court– agreed upon reductions 11.6 hours @ $250/hr = **$2,900.00**

Duff Westbrook

District Court– agreed upon reductions 18.8 hours @ $225/hr = **$4,230.00**

**Total Reductions– $7,130.00**

**Total Fees**: **$178,786.25** minus voluntary reductions of **$9,295.81** = **$169,846.93** plus gross receipts tax of **$9,872.35** = **$179,719.28.**

**Protection and Advocacy System, Inc.**

Colleen Miller– agreed upon reductions 10.25 hours @ $225/hr = **$2,306.25**

Michael Parks – agreed upon reductions 2.35 hours @ $185/hr = **$437.75**

Jama Fisk– agreed upon reductions 42.0 hours @ $150/hr = **$6,300.00**

Sandra Gomez– agreed upon reductions 26.6 hours @ $135/hr = **$3,591.00**

Nancy Koenigsberg– no reductions

**Total Reductions**– **$12,632.00.**

**Total Fees**: **$164,885.00**.

After reducing their attorneys' fees request by **$29,057.81** (**$16,425.81** (W&S voluntary reduction and agreed upon reduction) + **$12,632.00** (P&A)), Plaintiffs request attorneys' fees in the amount of **$344,604.28** (**$179,719.28 + $164,885.00**).

Maureen Sanders also claims attorney's fees for an additional 6.7 hours of work performed in this case and inadvertently omitted in her affidavit submitted in support of the fee petition. *See* Sanders' Supplemental Aff. ¶ 20 & Ex. B. Thus, Ms. Sanders seeks additional attorney's fees in the amount of **$1,675.00** ($250.00 x 6.7 hrs) plus gross receipts tax of **$97.35** for a total of **$1,772.35.** This brings Plaintiffs' attorneys' fees request to a total of **$346,376.63.**

Although Defendants do not object to the hourly rates plaintiffs' attorneys have requested, Defendants contend the Court should reduce the attorneys' fees requested because Plaintiffs "achieved only limited success." Accordingly, Defendants direct the Court to "focus on the significance of the overall relief obtained by the plaintiff[s] in relation to the hours reasonably expended on the litigation." Def.s' Resp. at 3, quoting *Hensley*, 461 U.S. at 434. Defendants also contend Plaintiffs are not entitled to attorneys' fees for work expended on unsuccessful claims.

**A. Partial Success**

As Defendants point out, this case had been in litigation for five years. During the pendency of this action, the parties have filed over two hundred (200) documents, including over twenty motions. The case also has been appealed to the Tenth Circuit once and remanded. Nonetheless, Defendants argue the Court should reduce Plaintiffs' attorneys' fee request on the grounds that Plaintiffs are not prevailing parties on their ADA and Rehabilitation Act claims and their claims against the Governor and the named state agencies, and the relief accorded to Plaintiffs in the judgment is "a mere shadow of the relief demanded."

The Court may reduce a lodestar calculation on the grounds that a prevailing party has achieved only partial success. *Hensley*, 461 U.S. at 435. In *Hensley*, the Supreme Court addressed this issue, stating:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* at 434. "[W]ork on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved," when distinctly different claims for relief are based on different facts and legal theories and counsel's work on one claim will be unrelated to the work on another claim. *Id.* at 434-35. However, where a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, it is difficult to divide the hours expended on a claim-by-claim basis because counsel's time is generally devoted to the litigation as a whole. *Id.* at 435. In such a case, the Court focuses on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*.

Plaintiffs contend they "do not seek compensation for time spent on the claims against Governor Johnson or on the ADA claims that are segregable and thus related solely to those claims; compensation is sought only for time spent on the ADA claims if it was non-segregable." Pls.' Mem. Br. at 1. The Court has carefully reviewed Plaintiffs' time sheets. The Court has considered Plaintiffs' voluntary reduction of their initial attorneys' fees request in the form of "no charge" hours and a 5% reduction by Ms. Sanders and Mr. Westbrook. The Court also considered Defendants' proposed reductions to Plaintiffs' attorneys' fees request for "billing entries concerning dismissed claims or parties, or otherwise not related to successful claims." Defs.' Resp. at 11. Plaintiffs concurred in part and further reduced their attorneys' fees request in response to these objections but not to the extent requested by Defendants. Having carefully considered Defendants' objections regarding billing entries for dismissed claims or parties or for unsuccessful claims, the Court is satisfied that Plaintiffs have removed the time expended as

requested by Defendants and as required by law. The Court will not further reduce Plaintiffs' attorneys' fees request on this basis.

Defendants next argue for an "across-the-board reduction in fees" and "propose a reduction of no less than fifty percent (50%)," because of Plaintiffs' "limited success." Defs.' Resp. at 10. Defendants assert Plaintiffs achieved only limited relief in comparison to the relief they sought in their Amended Complaint. According to Defendants, Plaintiffs sought statewide relief for all persons meeting the criteria for DD and D&E waiver programs, yet the Court did not grant them the "breadth of relief" they sought. Defendants also contend the Court rejected Plaintiffs' claims that the State's use of its Central Registry was illegal and that the State was not appropriating sufficient funding to provide waiver services to all eligible individuals. Finally, Defendants assert:

> To Plaintiffs, this case has never been about Defendants simply spending all of the money appropriated by the legislature. Nor has it been about curing occasional delays between allocation and the provision of services. It was about providing *all* eligible individuals with waiver services with reasonable promptness. Plaintiffs never took a middle ground, and the Court conclusively rejected their position.
>
> The Court's February 5, 2004 Judgment in this case provides relief that is very limited in comparison to Plaintiffs' goals in this lawsuit. After five years of litigation and a trip to the Tenth Circuit, Plaintiffs did *not* get a judgment requiring Defendants to provide all eligible individuals with waiver services within a reasonable amount of time or a judicial declaration that the use of waiting lists violates federal law.

Defs.' Resp. at 6-7.

Defendants are correct that under the Medicaid Act, waiver programs, unlike State Plans, do not have to be provided statewide, and the State can choose to provide home and community-based services to a limited group of eligibles. However, the case involved more issues besides

those Defendants highlight. Defendants also minimize the success achieved by Plaintiffs in this complex case.

From the inception of the lawsuit, Defendants maintained Plaintiffs had no cause of action. Defendants' first motion to dismiss raised Eleventh Amendment sovereign immunity and a failure to state a claim. Significantly, in this motion to dismiss, Defendants argued that the Medicaid Act did not create a federal statutory right to waiver services and thus the "reasonable promptness" provision did not apply to waiver services. In a rather lengthy opinion, the Court framed the issue as "whether the Medicaid Act's "reasonable promptness" requirement applies to waiver services, and if so, whether it creates a federal right enforceable under §1983." *Lewis v. New Mexico Dep't of Health*, 94 F.Supp.2d 1217, 1233 (D.N.M. 2000). After extensive analysis, the Court held the state officials were not entitled to Eleventh Amendment immunity from Plaintiffs' §1983 claims and the Medicaid Act's "reasonable promptness" requirement applied to waiver services and created a federal right enforceable under §1983. *Id.* at 1236. Defendants appealed the Court's ruling.

The Tenth Circuit affirmed the Court's ruling as to Defendants' motion to dismiss based on Eleventh Amendment immunity but declined to exercise pendent jurisdiction over the Court's denial of Defendants' motion to dismiss. *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970 (10th Cir. 2001). Notably, the Tenth Circuit recognized the complexity of the issues raised by Plaintiffs, stating:

> Although the defendants do not raise the argument, we note the more difficult question for resolution on the merits is whether §1396a(a)(8) creates a federal right directly benefitting the plaintiffs in this case. In order to create a federal right, the statute must reflect Congress's clear intent to benefit directly the particular plaintiffs in this case. This question turns on whether the plaintiffs may be included as "eligible individuals" under §1396a(a)(8). Whether "eligible" means eligible for Medicaid or eligible for both Medicaid and waiver services is not

> entirely clear. But because construing this language involves a more complicated analysis of the Medicaid statutes, the inquiry is more appropriately reserved for resolution on the merits of the case.

*Id.* at 977. The Court addressed this "more difficult" question of when Plaintiffs become "eligible individuals" to receive waiver services so as to trigger the Medicaid Act's "reasonable promptness provision" in its August 5, 2003 Memorandum Opinion and Order. *Lewis v. Dep't of Health,* 275 F.Supp.2d 1319 (D.N.M. 2003).

Defendants then filed a second motion to dismiss. Defendants moved the Court to dismiss Plaintiff Protection and Advocacy System, Inc.'s (P&A) for lack of standing. Plaintiffs prevailed against this challenge. The Court found P & A had independent standing to bring the lawsuit pursuant to the Developmental Disabilities Assistance and Bill of Rights Act, the Protection and Advocacy for Mentally Ill Individuals Act, and the Protection and Advocacy for Individual Rights Act. *See* November 5, 2002 Memorandum Opinion and Order.

Plaintiffs also claimed Defendants had not always spent the appropriations provided expressly for waiver services. The Court's February 5, 2004 Judgment addressed this issue and ordered Defendants to spend all funds appropriated by the State legislature for waiver services in the fiscal year in which the funds are appropriated. Moreover, Plaintiffs prevailed on their claim that Defendants were not filling available unduplicated recipient slots in a reasonably prompt manner. Significantly, during the pendency of the lawsuit and in response to Plaintiffs' claim that Defendants were not filling available unduplicated recipient slots in a reasonably prompt manner, Defendant took remedial steps to shorten the time between allocation and the provision of services by improving its method in procuring psychological and physical examinations and other evaluations needed for determining eligibility and by identifying staff member "champions" in each

of its regional offices to act as point persons to assist allocated individuals and their families through the eligibility process. Another significant change brought about by Plaintiffs' lawsuit was Defendant Department of Health's change in the allocation process, i.e., beginning the allocation process in the fiscal year prior to the new fiscal year funding. The Long Term Services Division (LTSD) also modified its allocation process by sending reports to regional offices on outstanding open allocations. This allowed the regional offices to follow up with individuals requesting waiver services and their families. LTSD also began to review expenditures on a monthly basis and started making allocations on at least a quarterly basis.

Contrary to Defendants' assertion, this case involved more than "occasional delays between allocation and the provision of services." Because Plaintiffs' achieved relief on some important issues, the Court finds that a fifty percent (50%) reduction is not warranted. However, the Court will reduce Plaintiffs' attorneys' fees to reflect their "partial" success.

Plaintiffs argued that the State was required to provide home and community-based services to all eligible individuals throughout the state. Plaintiffs also argued an individual became "eligible" for waiver services the moment an individual applied for DD or D&E services. Thus, Plaintiffs viewed Defendants' Central Registry as a "waiting list," in violation of section 1396n(c). After examining the Medicaid Act and its waiver of State Plan requirements, the Court found no support for Plaintiffs' arguments. The Court found that "unlike State Medicaid plans which are required to provide the same services (in amount, duration, and scope) to all needy individuals throughout the State, home and community-based services do not have to be provided throughout the State and the services can be provided to a limited group of eligibles." *Lewis*, 275 F.Supp.2d at 1340. The Court also found an individual became "eligible" for waiver services when the State

determined eligibility. In this case, the State does not determine eligibility until an unduplicated recipient slot is available in its waiver program and the individual is allocated that slot. *Id.* at 1344. Thus, Defendants' manner of determining eligibility made a Central Registry a necessity. Contrary to Plaintiffs' position, under section 1396n(c) and the implementing regulations, this practice is proper.

Additionally, in their reply, Plaintiffs incorrectly state that they are citing to the Court's Judgment, stating, "The Judgment entered by this Court orders the Defendant to Provide 'waiver services to individuals on the DD and D&E Central Registries who are medically and financially eligible for such services with reasonable promptness until the number of individuals being served *equals the current number of unduplicated recipient slots for that waiver* . . . ." Pls.' Reply at 3. However, Plaintiffs cite to **their** Proposed form of Judgment which they submitted to the Court on September 13, 2003. The Court did not adopt Plaintiffs' or Defendants' proposed forms of Judgment and entered its own Judgment on February 5, 2004.

Defendants maintained the State was authorized to serve only the number of individuals for which the legislature chose to authorize funding, **up to** the number of DD and D&E recipients listed in their State Plans. The Court agreed and recognized legislative appropriations as effective caps on the number of individuals to be served in the program, stating:

> The Court recognizes the State has great discretion in developing its waiver programs, including setting eligibility requirements and limitations for waiver services. Nonetheless, this discretion is not unfettered. Once the State sets up its waiver programs, it is obligated to implement the waiver programs as it has fashioned them. In this case, the State has set limits for waiver services up to the "availability of appropriations provided expressly for this purpose."

*Lewis,* 275 F.Supp.2d at 1345 (emphasis added). Moreover, the Court did not direct the State to appropriate more funds for the waiver programs; its Judgment ordered Defendants to "spend all

funds appropriated by the State Legislature for DD and D&E waiver services in the fiscal year in which the funds are appropriated." Court's Judgment at 2.

Because Plaintiffs did not prevail on these issues, the Court will reduce their attorneys' fees request by fifteen percent (15%). After voluntary reductions, elimination of hours spent on unsuccessful claims, and a fifteen percent (15%) reduction, Plaintiffs are entitled to the following attorneys' fees:

**Sanders and Westbrook Law Firm**

Maureen Sanders

District Court time– 208.7 hours @ $250/hr = **$52,175.00**
**4.2** hours no charge

Agreed Upon Reductions– 11.6 hours @ $250/hr = **$2,900.00**

Court of Appeals time– 69.4 hours @ $250/hr = **$17,350.00**
**6.7** hours no charge

**Total for Maureen Sanders– $66, 625.00**

Duff Westbrook

District Court time– 425.7 hours @ $225/hr = **$95,782.50**
**25.7** hours no charge

Agreed Upon Reductions– 18.8 hours @ $225/hr = **$4,230.00**

Court of Appeals time– 88.1 hours @ $225/hr = **$19,822.50**
**0.5** hours no charge

**Total for Duff Westbrook– $111,375.00**

Law Clerk– 9.25 hours @ $85/hr = **$786.25**

**Total for Sanders & Westbrook Law Firm– $178,786.25** - 5% voluntary reduction in the amount of **$9,295.81** = **$169,846.93**

Reduction of 15% in the amount of **$25,477.03** for a total of **$144,369.90**

Gross Receipts Tax (5.8125%) in the amount of **$8,391.50**

**Total Fees and Tax– $144,369.90 + $8,391.50 = $152,761.40**

**Protection and Advocacy System, Inc.**

Total Fees Requested– **$164,885.00**

Reduction of 15% in the amount of **$24,732.75** for a total of **$140,152.25**

**Attorneys' Fees for Plaintiffs– $152,761.40** + **$140,152.25** = **$292,913.65.**

**Additional Hours Requested by Maureen Sanders**

District Court time– 6.7 hours @ $250/hr = **$1,675.00** ($250.00 x 6.7 hrs) minus 15% reduction of **$251.25** = **$1,423.75** plus gross receipts tax of **$82.75** for a total of **$1,506.50.** Accordingly, the Court will grant Plaintiffs attorneys' fees in the amount of **$292,913.65** + **$1,506.50** = **$294,420.15**.

## II. Costs and Expenses

### A. Costs

The Court reviews the Clerk's assessment of costs *de novo. Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1550 n.11 (10th Cir. 1987). Federal Rule of Civil Procedure 54 states that "costs . . . shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d)(1). Under this rule, the Court may tax as costs the following: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees for printing and witnesses; (4) fees for copies of papers necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees,

expenses, and costs of special interpretation services. 28 U.S.C. § 1920. "The taxing of costs pursuant to Rule 54(d)(1) rests in the sound judicial discretion of the trial court . . . ." *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th Cir. 2002). And, "[t]he trial court's exercise of this discretionary power 'turns on whether or not the costs are for materials necessarily obtained for use in the case.'" *Id.* (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996)).

**Plaintiffs' Bill of Costs**

1. Deposition costs: $7,318.75
2. Filing Fees in U.S. District Court: $150.00
3. Service of Process: $148.14

**Total Costs Requested: $7,616.89**

Defendants object to Plaintiffs' costs for copies of depositions that Plaintiffs did not use in connection with their motion for summary judgment. According to Defendants, Plaintiffs used fewer than half of the depositions listed on their bill of costs. Defendants argue that Plaintiffs are allowed deposition costs only "when the deposition is reasonably necessary to the litigation." *See* LR-CV 54.2(b)(2). Defendants claim Plaintiffs did not use the depositions of Randy Ide, S. Faubion, J. Allen, A. Sims, J. Liddell, B. Nations, J. Garofalo, P. Elwell, R. Weinreich, and R. Auerbach. Accordingly, Defendants contend these costs, in the amount of $3,329.57, must be excluded from the taxed costs.

Defendants also challenge Plaintiffs' costs for fees for service of process. Because claims against three of the five original Defendants were dismissed, Defendants contend costs for service

of process for the dismissed Defendants should not be taxed. Defendants propose a reduction of $88.88 to reflect the three dismissed Defendants (3/5 of $148.14).

Plaintiff concur with Defendants' argument regarding reducing the service of process fees. Plaintiffs will reduce their bill of costs in the amount of $88.88. However, Plaintiffs contend they should be compensated for all depositions. Plaintiffs assert all of the depositions were "reasonably necessary to the litigation." Additionally, Plaintiffs contend all of the depositions, except the depositions of Ide and Auerbach, were taken by Defendants or used in the summary judgment pleadings. Plaintiff argue that, at the time, it was necessary to buy the challenged transcripts because they anticipated the Deponents as trial witnesses and needed the deposition transcripts for trial preparation. As to the Ide deposition, Plaintiffs claim Ide was the person with the necessary information regarding the Central Registries, information vital to the litigation. Plaintiffs deposed Auerbach because he was designated by Defendants as an expert witness. Because Plaintiffs felt Auerbach's expert report did not adequately alert them completely of his anticipated testimony or his qualifications, they deposed him.

"Section 1920 permits recovery for the costs of taking, transcribing, and copying depositions 'necessarily obtained for use in the case." *Furr*, 824 F2d at 1550. Whether a deposition has been necessarily obtained is a question of fact to be determined by the Court. *See Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998). While the "most direct evidence of 'necessity' is the actual use of the materials obtained by counsel or by the court," the Court may find necessity and award costs for materials reasonably necessary for use in the case, even if they are not used at trial. *Id.* (internal quotations omitted)(quoting *U.S. Indus.*, 824 F.2d at 1245-46). "As long as the taking of the depositions appeared to be reasonably

necessary at the time it was taken, barring other appropriate reasons for denial, the taxing of such costs should be approved." *Allison*, 289 F.3d at 1249; *see also Callicrate*, 239 F.3d at 1340 ("We have recognized that it is ordinarily best to judge reasonable necessity under §1920 in light of the facts known to the parties at the time the expenses were incurred . . . .").

The Court finds that all of the depositions to which Defendants object were reasonably necessary to the litigation. Additionally, as Plaintiffs point out, except for the depositions of Ide and Auerbach, Defendants took all the depositions at issue. It was reasonable for Plaintiffs to request copies of the depositions initiated by Defendants. *Callicrate*, 239 F.3d at 1341. However, Plaintiffs agree to Defendants' proposed reduction of $88.88 in regard to fees for services of process. Accordingly, the Court will sustain, in part, Defendants' objections to Plaintiffs' Bill of Cost. The Court will award Plaintiffs costs in the amount of **$7,528.01** ($7,616.89 - $88.88).

**B. Expenses**

Other out-of-pocket expenses incurred during litigation and not covered under §1920 may be awarded as attorneys' fees under 42 U.S.C. § 1988. Plaintiffs must show the claimed expenses are reasonable and not absorbed as part of law firm overhead but are normally billed to a private client. *Case*, 157 F.3d at 1257. Plaintiffs, as prevailing parties, bear the burden of establishing the amount of compensable costs and expenses to which they are entitled. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir. 1986).

Plaintiffs seek payment for expenses for copy costs, postage, long distance calls, and faxes. *See* Sanders Aff., Ex. 4 & 5; Koenigsberg Aff. Plaintiffs attest to the fact that these expenses are not absorbed in a law office overhead and are passed on to paying clients. Sanders

Aff. ¶ 25; Koenigsberg Aff. ¶ 67. Westbrook and Sanders request expenses in the amount of **$8,015.97** and P&A requests expenses in the amount of **$3,990.56**, for a total of **$12,006.53**. Plaintiffs also attest to the fact that all expenses incurred in the case were reasonable and necessary. Plaintiffs also contend they seek reimbursement for certain expenses under alternative bases, as statutory costs under 28 U.S.C. §1920 and under 42 U.S.C. §1988. Plaintiffs assert they are not seeking a double recovery of any overlapping costs and expenses.

Having reviewed the requested litigation expenses, the Court finds these expenses are reasonable. Accordingly, the Court will grant Plaintiffs' requested expenses in the amount of **$4,478.52** ($12,006.53 - $7,528.01).

## III. Additional Attorneys' Fees

Plaintiffs contend they have incurred additional fees and expenses in preparing the Reply brief. Plaintiffs seek the following additional attorneys' fees in connection with preparing the Reply brief:

**Sanders & Westbrook Law Firm**

Maureen A. Sanders 7.0 hours @$250/hr = **$1,750.00**

Duff Westbrook 3.6 hours @$225/hr = $ **810.00**

**Total Attorneys' Fees** **$2,560.00**

**Gross Receipts Tax** **$148.80**

**Total Additional Attorneys' Fees — $ 2,708.80**

**Protection and Advocacy System, Inc.**

Nancy Koenigsberg 11.85 hours @ $175/hr = **$2,073.75**

Accordingly, the Court will grant Plaintiffs additional attorneys' fees in the amount of **$4,782.55.**

## IV. Attorney's Fees and Expenses for Phil Davis

Mr. Phil Davis, an expert on attorneys fees in this state and fee counsel in this case, attests to the fact that all the work he performed and expenses he incurred were reasonable and necessary with respect to the claims for fees and expenses raised in Plaintiffs' Motion for Attorneys' Fees. Mr. Davis claims the following attorney's fees and expenses:

**Davis Law Firm**

Phil Davis 18.8 hours @ $250/hr = **$4,700.00**

1.7 hours no charge

Gross Receipts Tax **– $273.18**

Expenses– $352.00

**Total Fees, Tax and Expenses— $5,325.18**

Defendants did not object to Mr. Davis' hourly rate or the reasonableness of his fee request. Accordingly, the Court will grant Mr. Davis attorneys fees and expenses in the amount of **$5,325.18**.

Mr. Davis also requests additional attorney's fees and expenses in connection with preparing the Reply brief. Mr. Davis requests the following additional attorney's fees and expenses:

**Davis Law Firm**

Phil Davis 27.7 hours @ $250/hr = **$6,925.00**

Gross Receipts Tax **– $402.51**

Expenses– **$139.51**

**Total Additional Fees, Tax and Expenses— $7,467.02**

Accordingly, the Court will grant Mr. Davis attorney's fees and expenses in the amount of **$12,792.20**.

**NOW THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiffs are awarded attorneys' fees in the amount of **$299,202.70** (**$294,421.15** + **$4,782.55**).

**IT IS FURTHER ORDERED** that Phil Davis is awarded attorney's fees and expenses in the amount of **$12,792.20**.

**IT IS FURTHER ORDERED** that Defendants' Objections to Plaintiffs' Bill of Costs is sustained in part. Plaintiffs are awarded costs in the amount of **$7,528.01**.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded litigation expenses under 42 U.S.C. §1988 in the amount of **$4,478.52**.

**Dated** this 5th day of January, 2005.

**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

**Attorneys for Plaintiffs:**
Duff Westbrook
Maureen Sanders
Nancy Koenigsberg

**Attorneys for Defendants:**
Kurt Wihl
Gary J. Van Luchene