IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEN LEWIS, AARON NORRID, BILLY JO
QUISENBERRY and FRED ROMERO, by and
through their legal guardian and next friend THE
ARC OF NEW MEXICO, BREANNE LIDDELL,
by and through her parent and legal guardian JUDY
LIDDELL, MATTHEW ALLEN, by and through his
parents and legal guardians JIM and ANGELA ALLEN,
FAY MORGAN, DEBORAH EMINGER and
PROTECTION AND ADVOCACY SYSTEM, INC.,

       Plaintiffs,

vs.                                                    No. CIV 99-0021 MV/JHG

NEW MEXICO DEPARTMENT OF HEALTH, NEW
MEXICO  DEPARTMENT OF HUMAN SERVICES,
J. ALEX VALDEZ, Secretary of the Department of Health
and Secretary Designee of the Department of Human
Services in his official capacities, and GOVERNOR
GARY JOHNSON in his official capacity,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

       This matter is before the Court on Plaintiff's *Corrected* Motion for Leave of Court to Amend Complaint to Add Deborah Armstrong, Acting Secretary of the New Mexico Department of Aging and Long-Term Care in Her Official Capacity, Substituting Michelle Lujan-Grisham, Acting Secretary of the New Mexico Department of Health in Her Official Capacity and Substituting Pamela Hyde, Secretary of the Human Services Department, in Her Official Capacity as Defendants and Memorandum in Support Thereof **[Doc. No. 221]**, filed September 27, 2004, and fully briefed on November 19, 2004.  Defendants oppose the motion.  Having considered the

motion, the memoranda in support and in opposition, and the relevant law and being otherwise fully informed, the Court finds that the motion should be granted in part and denied in part.

## I.  Background

Plaintiffs filed this action on January 8, 1999.  At that time, the Department of Health (DOH) administered the DD waiver program, and the Human Services Department (HSD) administered the D&E waiver program.  The HSD also served as the single state agency receiving federal Medicaid funds for both waiver programs.  In 2002, the DOH took over the D&E waiver program, but the HSD continued to receive the federal Medicaid funds.

On February 5, 2004, the Court entered its Judgment.  Shortly thereafter, the New Mexico Legislature created the New Mexico Aging and Long-Term Services Department (ALTSD).  *See* N.M.Stat.Ann. §9-23-1 through §9-23-12.  The ALTSD Act transferred the functions of the home- and community-based medicaid waiver program for the disabled and elderly (D&E waiver) to this newly created department.  *Id.*  In addition, Governor Richardson appointed Deborah Armstrong as the Acting Secretary of the ALTSD.  In 2003, Governor Richardson also had appointed Pamela Hyde as Secretary of the HSD and Michelle Lujan-Grisham as Secretary Designate of the DOH.

Plaintiff argues that, in order for it to secure post-judgment injunctive relief for individuals waiting for D&E waiver services and in order for the Court to have jurisdiction over Deborah Armstrong, the Court must allow it to amend the complaint to add Ms. Armstrong as a defendant. Plaintiff also contends the Court should allow it to substitute Pamela Hyde as the Secretary of HSD and Michelle Lujan-Grisham as the Secretary Designate for the DOH.

Defendants oppose the motion on the grounds that the substitution of the new Secretaries of the DOH and the HSD is sought "months following the Court's entry of Judgment," and because Plaintiff has not met its burden to show that these individuals "intend to carry out the same policies that gave rise to the claims leading to the Judgment." Defs.' Resp. at 3. In addition, Defendants contend it would be inappropriate to amend Plaintiff's complaint to add Deborah Armstrong as a defendant because the ALTSD had no responsibility for either waiver program and, in fact, it did not exist when the Court entered its Judgment. *Id.* Defendants further argue that, if Plaintiff seeks to substitute Deborah Armstrong for the Secretary of HSD, then Plaintiff has the burden to show the new agency will carry out the policies that resulted in the Court's Judgment against the Secretary of the HSD.

## II.  Discussion

Rule 25 of the Federal Rules of Civil Procedure governs substitution of parties. Rule 25 states in pertinent part:

> When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

FED.R.CIV.P. 25(d)(1). The Advisory Committee Notes also state:

> Under the [1961] amendment, the successor is automatically substituted as a party without an application or showing of need to continue the action. An order of substitution is not required, but may be entered at any time if a party desires or the court thinks fit.
> ** ** ** ** ** **
> Where the successor does not intend to pursue the policy of his predecessor which gave rise to the lawsuit, it will be open to him, after substitution, as plaintiff to seek voluntary dismissal of the action, or as defendant to seek to have the action dismissed or to take other appropriate steps to avert a judgment or decree.

3

> As the present amendment of Rule 25(d)(1) eliminates a specified time period to secure substitution of public officers, the reference in Rule 6(b)(regarding enlargement of time) to Rule 25 will no longer apply to these public-officer substitutions.
>
> As to substitution on appeal, the rules of the appellate courts should be consulted.

Fed.R.Civ.P. 25 advisory committee's note.  Rule 43(c)(2) of the of Federal Rules of Appellate Procedure essentially tracks the language of Rule 25(d)(1).  Based on the language of Rule 25(d)(1), Plaintiff argues that substitution is automatic.

Defendants disagree.  Relying on *Lewis v. State of Delaware Dep't of Public Instruction*, 986 F.Supp. 848 (D.Del. 1997), Defendants argue that because Plaintiff seeks injunctive relief, the Court may not substitute the new Secretaries of the DOH and HSD until Plaintiff shows that these new individual intend to carry out the same policies that gave rise to the claims leading to the Judgment.  Defs.' Resp. at 3.  Defendants contend Plaintiff cannot meet this burden.  According to Defendants, "[t]he Court granted summary judgment against the former Secretaries [of the DOH and HSD] based upon historical evidence that not all funds appropriated by the Legislature had been expended on the waiver programs in the years of appropriation, but "there is no evidence that this practice will occur in the future or that the new Cabinet Secretaries intend that it occur." *Id.*

In *Lewis*, Plaintiff, an African-American, brought an action under Title VII and 42 U.S.C. §§ 1981 and 1983 against three employees of Defendant Delaware Department of Public Instruction, alleging they did not promote him because of his race and national origin and in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission.  During the pendency of the action, both the State Superintendent and the Department of Public Instruction were replaced by the Secretary of Education and the

4

Department of Education, respectively. The Court found that under Rule 25 substitution was automatic and thus substituted Dr. Metz, the Secretary of Education, for Defendant Ferguson, the Acting State Superintendent. *Lewis*, 986 F.Supp at 854. The Court then found that in order for Plaintiff to maintain a suit against Dr. Metz in her official capacity for injunctive relief, Plaintiff had to show a continuation by the successor of the challenged policy or practice. *Id.* Because the injunctive relief Plaintiff sought against Defendant Ferguson for racial discrimination and retaliation was personal to actions or inactions on the part of Defendant Ferguson, the Court found Plaintiff had not met his burden. *Id.* Additionally, the court found there was "no charge made in the record that the policy of the Department of Public Instruction or the Department of Education [was going] to follow the intentional practices alleged or that Metz ha[d], or [would], continue the alleged unlawful acts." *Id.* Accordingly, the Court granted summary judgment in favor of Dr. Metz as to Plaintiff's claim for injunctive relief under §§ 1981 and 1983.

The *Lewis* court relied on *Spomer v. Littleton*, 414 U.S. 514 (1974), and *Mayor of the City of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974) to arrive at its conclusion. In *Spomer v. Littleton*, 414 U.S. 514 (1974), Plaintiffs brought an action against Peyton Berbling, individually and in his capacity as State's Attorney of Alexander County, Illinois. The complaint charged Berbling with purposeful racial discrimination, under color of law. The district court dismissed the complaint as to Plaintiffs' request for injunctive relief against Berbling. The Court of Appeals reversed. Shortly after the Court of Appeals' ruling, W.C. Spomer was elected to succeed Berbling as State's Attorney for Alexander County and was substituted for Berbling.

5

The Supreme Court granted certiorari. The Supreme Court found the record did not show there was a controversy between W.C. Spomer and the Plaintiffs that needed resolution, stating:

> It has become apparent, however, that there is nothing in the record upon which we may firmly base a conclusion that a concrete controversy between W.C. Spomer and the respondents is presented to this Court for resolution. No allegations in the complaint cited any conduct of W.C. Spomer as the basis for equitable or any other relief. Indeed, Spomer is not named as a defendant in the complaint at all, and, of course, he never appeared before either the District Court or the Court of Appeals. The injunctive relief requested against former State's Attorney Berbling, moreover, is based upon an alleged practice of willful and malicious racial discrimination evidenced by enumerated instances in which Berbling favored white persons and disfavored [African-Americans]. **The wrongful conduct charged in the complaint is personal to Berbling**, despite the fact that he was also sued in his then capacity as State's Attorney. No charge is made in the complaint that the policy of the office of the State's Attorney is to follow the intentional practices alleged, apart from the allegation that Berbling, as the incumbent at the time, was then continuing the practices he had previously followed.

*Spomer,* 414 U.S. at 521 (emphasis added).

In *Mayor of the City of Philadelphia*, the city charter gave the Mayor a double appointment power with regard to the Philadelphia School Board (School Board). The city charter empowered the Mayor to appoint the Educational Nominating Panel (Nominating Panel) which in turn assisted him in appointing the members of the School Board. The Nominating Panel consisted of 13 members who, after seeking qualified applicants for the School Board, submitted three nominees for every vacancy on the School Board. The Mayor also had the discretion to request an additional three nominees per vacancy. The Mayor appointed members to the School Board from the nominees submitted by the Nominating Panel. The members of the Nominating Panel served two-year terms. Since 1965 there had been five Nominating Panels. Mayor Tate had appointed the 1965, 1967, 1969, and 1971 Nominating Panels. Mayor Tate's term expired in 1972. Mayor Rizzo appointed the 1973 Nominating Panel.

After Mayor Tate's appointment of the 1971 Nominating Panel, Plaintiffs filed a class action, alleging Mayor Tate had violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against African-Americans in his appointments to the 1971 Nominating Panel. Plaintiffs sought an injunction barring the 1971 Nominating Panel from submitting nominees for the School Board to the Mayor and a declaratory judgment that Mayor Tate had violated the Constitution. Plaintiffs also requested an order directing the Mayor to appoint a Nominating Panel fairly representative of the racial composition of the school community.

Following two days of hearings, the district court dismissed the complaint. The Court of Appeals for the Third Circuit reversed, concluding that Plaintiffs had established an unrebutted prima facie case of unlawful exclusion of African-Americans from consideration for service on the 1971 Nominating Panel. Additionally, although the Mayor's office had changed hands while the case was pending and although there was nothing in the record addressed to the appointment practices of Mayor Rizzo with regard to the Nominating Panel, the Court of Appeals directed the issuance of extensive injunctive relief against Mayor Rizzo.

The Supreme Court held the Court of Appeals erred in overturning the district court's findings and conclusions and in ordering prospective injunctive relief against Mayor Rizzo "**in a case devoted exclusively to the personal appointment policies of his predecessor**." *Mayor of the City of Philadelphia*, 415 U.S. at 613 (emphasis added). The Supreme Court stated:

> Where there have been prior patterns of discrimination by the occupant of a state executive office but an intervening change in administration, the issuance of prospective coercive relief against the successor to the office must rest, at a minimum, on supplemental findings of fact indicating that the new officer will continue the practices of his predecessor.

*Id*. at 622 (citing to *Spomer,* 414 U.S. 514 (1974)).

The facts in this case differ significantly from the facts alleged in *Spomer* and *Mayor of the City of Philadelphia*. This case does not involve the "willful and malicious racial discrimination" of one individual nor one individual's "discretionary appointment power" but rather a set of institutional practices. In their Amended Complaint, Plaintiffs "seek to remedy the pervasive, systematic and continuing failure of the Defendants to provide them and other individuals with disabilities with medically necessary services in a reasonably prompt manner in sufficient quantity to meet their needs as required by federal law, and to remedy the Defendants' continuing failure to provide such services in the most integrated setting." Am. Compl. ¶ 1. Plaintiffs further allege that Defendants' "failure to provide Medicaid DD [and D&E] Waiver services to eligible individuals with reasonable promptness is proximately caused by these Defendants' arbitrary and unreasonable policies, practices and funding decisions, their failure to request and allocate sufficient funding for Medicaid waiver service programs, and their failure to fill existing positions of employment within the New Mexico Department of Health and Human Services, and to create and fund new positions of employment within those agencies which are needed to administer the Medicaid waiver program in accordance with the requirements of federal law." Am. Compl. ¶ 40.

Thus, the violations alleged by Plaintiffs result not from one individual's action or inaction but from the departments' policies and practices which permeate all levels of the DOH and the HSD, from intake of qualified individuals into the waiver programs to delivery of services. The Court recognizes that Defendants have taken some very positive steps to address some of the problems in administering the waiver programs. *See* August 5, 2003 Memorandum Opinion and Order at 42. Many changes in Defendants' policies occurred subsequent to the commencement of

this lawsuit. In fact, there is no doubt that some of the changes were implemented solely because of the pendency of this action. Notwithstanding, the February 18, 2005 hearing indicates Defendants are still following some of their predecessors' practices. For example, although Defendants are aware that "approximately twenty percent of the individuals on the Central Registry who are offered allocations to the DD Waiver program do not complete the process," and "a significant percentage of individuals on the Central Registry do not respond to letters advising them of allocations to the D&E Waiver program," Defendants initially sent out only 200 allocation letters in 2004 and sent them late. *See* August 5, 2003 Memorandum Opinion and Order at 31. Predictably, only 89 individuals responded. February 18, 2005 Transcript at p. 23-25.

Accordingly, the Court will grant Plaintiff's motion to substitute Michelle Lujan-Grisham as Secretary of the New Mexico Department of Health. However, the Court denies Plaintiff's motion to amend the complaint to add Deborah Armstrong as a defendant. Instead, because the ALTSD is now responsible for administering the D&E waiver, the Court will allow Plaintiff to substitute Ms. Armstrong, the Secretary of the ALTSD, for the Secretary of the HSD.

**IT IS THEREFORE ORDERED** that Plaintiff's *Corrected* Motion for Leave of Court to Amend Complaint to Add Deborah Armstrong, Acting Secretary of the New Mexico Department of Aging and Long-Term Care in Her Official Capacity, Substituting Michelle Lujan-Grisham, Acting Secretary of the New Mexico Department of Health in Her Official Capacity and Substituting Pamela Hyde, Secretary of the Human Services Department, in Her Official Capacity as Defendants and Memorandum in Support Thereof **[Doc. No. 221]**, is granted in part and denied in part. Plaintiff's motion to substitute Michelle Lujan-Grisham as Secretary of the New

Mexico Department of Health is granted. Plaintiff's motion to amend the complaint to add Deborah Armstrong as a defendant is denied. Deborah Armstrong as Secretary of the Aging and Long Term Services Department is substituted for the Secretary of the Human Services Department.

**Dated** this 28th day of September 2005.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

**Attorneys for Plaintiff:**
Duff Westbrook
Maureen Sanders
Nancy Koenigsberg


**Attorneys for Defendants:**
Kurt Wihl
Gary J. Van Luchene